The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. On August 23, 1997, the employment relationship existed between plaintiff and defendant.
3. Defendant is self-insured with Key Risk Management Services as the servicing agent.
4. Plaintiffs average weekly wage will be calculated from an Industrial Commission Form 22 Wage Statement to be submitted into evidence.
5. On August 23, 1997, plaintiff sustained an admittedly compensable injury to her right shoulder arising out of and in the course and scope of her employment with defendant.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 44-year-old female who is a high school graduate. Plaintiff attended Fayetteville Institute and received an associate degree in business administration in 1996.
2. Plaintiff first became employed with defendant as a crew person and was ultimately promoted to area manager. As area manager, plaintiff was required to perform all the tasks of crew person in addition to her managerial duties.
3. Plaintiff sustained an admittedly compensable injury to her right shoulder and arm when she slipped in milk shake mix and fell to the floor. As a result of the fall, plaintiff also injured her right elbow, right knee and the area of her upper back near her scapula.
4. Plaintiff was initially seen in the emergency room and was ultimately referred to Dr. James P. Flanagan, an orthopedic surgeon, for follow-up care.
5. Plaintiff was first seen by Dr. Flanagan on September 8, 1997, where she provided complaints of pain in her posterior right shoulder radiating into her neck and into the posterior aspect of the shoulder. Plaintiff was diagnosed as having trapezius spasms/contusion or strain. Dr. Flanagan recommended light physical therapy with stretching and range of motion of the shoulder to prevent stiffness. Dr. Flanagan restricted plaintiff to no heavy use of the hand or arm.
6. Between September 8, 1997, and January 15, 1998, plaintiff was treated conservatively and advised by Dr. Flanagan to return to work within certain restrictions. Plaintiff did return to work within the restrictions provided by Dr. Flanagan, but occasionally called in to defendant that she was unable to work due to pain she was experiencing.
7. On January 15, 1998, plaintiff was seen by Dr. Flanagan who indicated that plaintiff was unable to return to full duty. Dr. Flanagan recommended an MRI of the shoulder and posterior musculature, as well as treatment with trigger point injections at a pain clinic.
8. On February 4, 1998, plaintiff was seen by Dr. Glen Subin, an orthopedic surgeon, at the request of the case manager, Linda Christopher. Dr. Subin recommended that plaintiff undergo a CT scan of her neck to rule out evidence of discogenic disease as well as an arthrogram of the right shoulder. Dr. Subins restrictions included limited activities of the right arm, using mainly the left arm with the right arm as a helper only. Plaintiff was to return to Dr. Subin after she had undergone the CT scan and arthrogram. Plaintiff never returned to Dr. Subin for follow-up evaluation.
9. Plaintiff was discharged by defendant on February 20, 1998, for violation of company policy requiring an employee to call defendant when unable to report for work.
10. On April 21, 1998, plaintiff was able to return to gainful employment with Cup For Christ Bible Book Store in Fayetteville, North Carolina. Plaintiffs duties included running the cash register, making deposits, making and receiving orders, keeping accurate records (accounts payable and accounts receivable), sales promotions and handling credit accounts.
11. Plaintiff left the bookstore in September 1998 and began caring for children in her home. She continued this childcare work at the time of the hearing before the Deputy Commissioner.
12. Plaintiff was temporarily totally disabled from February 20, 1998, when terminated from employment while she was working on light duty, through April 21, 1998, when she had wage earning capacity and was able to return to gainful employment.
13. Plaintiff did not cooperate with Linda Christopher, the case manager, and many of her medical complaints were questionable after April 1998. Therefore, the Deputy Commissioner did not accept her testimony about her inability to work after April 21, 1998, as credible. The Full Commission declines to reverse the credibility determination of the Deputy Commissioner.
14. Plaintiff reached maximum medical improvement on September 21, 1998. As a result of the compensable injury by accident, plaintiff retains a 10% permanent functional impairment to the right arm.
14. Defendant failed to submit a Form 22. Therefore, the undersigned find that plaintiffs average weekly wage is $150.00 per week as set forth on the Form 19 in the Commissions file.
15. Defendant admitted the compensability of plaintiffs injury by accident and paid temporary total disability compensation to plaintiff from November 24, 1997 until December 7, 1997. Defendant failed to notify the Industrial Commission on a form prescribed by the Commission that compensation was being paid to plaintiff.
 ***********
Based on the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On August 23, 1997, plaintiff sustained a compensable injury to her back, neck, right shoulder/arm, right elbow and right knee arising out of and in the course and scope of her employment with defendant. N.C. Gen. Stat. 97-2(6).
2. Following plaintiffs injury by accident, plaintiff continued to work light duty with defendant, missing work occasionally due to pain she was experiencing in her upper back and right shoulder until she was terminated on February 20, 1998. This termination, in effect, took away plaintiffs light duty status. Therefore, she is entitled to receive temporary total disability benefits at the rate of $100.05 per week from February 20, 1998 until April 21, 1998, when she was no longer disabled and was able to return to gainful employment. N.C. Gen. Stat. 97-29.
3. As the result of the compensable injury by accident plaintiff retains a 10% permanent functional impairment to the right arm and is entitled to benefits at the rate of $100.05 per week for twenty-four (24) weeks. N.C. Gen. Stat. 97-31(13).
4. Subject to the time limitation in N.C. Gen. Stat. 97-25.1, plaintiff is entitled to have defendant provide all medical treatment arising from her August 23, 1997 compensable injury to the extent it tends to effect a cure, give relief or lessen plaintiffs disability. N.C. Gen. Stat. 97-25.
5. Defendant failed to comply with the notification requirments of N.C. Gen. Stat. 97-18(b) and is therefore subject to the imposition of sanctions by the Commission.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorneys fee approved below, defendant shall pay temporary total disability benefits to plaintiff at a compensation rate of $100.05 per week from February 20, 1998 through April 21, 1998. These amounts have accrued and are payable in a lump sum.
2. Subject to a reasonable attorneys fee approved below, defendant shall pay compensation to plaintiff at the rate of $100.05 per week for twenty-four (24) weeks for the 10% permanent impairment rating plaintiff sustained to the arm.
3. A reasonable attorneys fee in the amount of twenty-five percent (25%) of the compensation due plaintiff is approved for plaintiffs former counsel who represented plaintiff until the appeal to the Full Commission. The attorneys fee shall be deducted from the amounts due plaintiff and forwarded by defendant directly to plaintiffs former counsel.
4. Subject to the time limitation of N.C. Gen. Stat. 97-25.1, defendant shall pay all medical expenses incurred by plaintiff as a result of her compensable injury.
5. Defendant shall pay the costs, including $250.00 as sanctions for its failure to comply with the notice requirements of N.C. Gen. Stat.97-18(b).
This the _____ day of January, 2001.
 S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________ THOMAS J. BOLCH COMMISSIONER
S/___________________ CHRISTOPHER SCOTT COMMISSIONER